UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CURT A. WYKSTRA,

                                        Plaintiff,


        -v.-                                              5:09-CV-01291
                                                         (NPM)

LIFE INSURANCE COMPANY OF
NORTH AMERICA; BORGWARNER,
INC,; BORGWARNER MORSE TEC,
INC.; AND BORGWARNER FLEXIBLE
BENEFITS PLAN,

                                        Defendants.

APPEARANCES:                            OF COUNSEL:

SATTER & ANDREWS, LLP                   ROSS P. ANDREWS, ESQ.
Attorneys for Plaintiff
217 South Salina Street
6th Floor
Syracuse, New York 13202

WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER, LLP                  EMILY ANNA HAYES, ESQ.
3 Gannet Drive                          FRED N. KNOPF, ESQ.
White Plains, New York 10604-3407


Neal P. McCurn, Senior District Judge


### MEMORANDUM - DECISION and ORDER

### I.  Introduction

        Presently before the court in this ERISA action are cross motions for

summary judgment.  The motions, which have been fully briefed, are decided on the submitted papers without oral argument.

Plaintiff, Curt A. Wykstra, brings this action against defendants, Life Insurance Company of North America ("LINA"); BorgWarner, Inc.; BorgWarner Morse TEC Inc.; and BorgWarner Flexible Benefits Plan seeking damages and declaratory relief on his claim for wrongful termination of his long term disability ("LTD") benefits pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  See 29 U.S.C. § 1132(a)(1)(B).  Plaintiff also seeks prejudgment interest and attorney's fees.

## *II.  Legal Standard*

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant has the initial burden to show the court why it is entitled to summary judgment.  See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)).  If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact.  See id., at 273 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

When the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).  Where, as here, a court is considering cross-motions for summary judgment, each party's motion must be evaluated "on its own merits, taking care in

2

each instance to draw all reasonable inferences against the party whose motion is under consideration."  Byrne v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010) (quotation and citation omitted).

### III.  Factual Background

The facts in this case are largely undisputed.  Plaintiff is a former employee of defendant, BorgWarner Morse TEC Inc., which is a subsidiary of defendant BorgWarner, Inc.  Plaintiff received LTD benefits under the Group Insurance Policy (Policy number LK 0030479) ("the Policy") issued by defendant LINA to BorgWarner, Inc.  LINA terminated Plaintiff's LTD benefit because it concluded that he no longer met the definition of disabled under the Policy.  The sole issue in this case is whether LINA's decision to terminate Plaintiff's LTD benefits was supported by substantial evidence.[1]  Therefore, the dispute between the parties boils down to an interpretation of the facts as opposed to a dispute regarding the accuracy of the facts themselves.

Plaintiff was employed by BorgWarner Morse TEC from June 1, 1981 until June 22, 2004, when he went out on medical leave.  At the time he went out on medical leave, Plaintiff worked as a Senior Designer/Automotive Design Drafter.  In terms of exertion level, that position is considered to be a "light" occupation,

---

[1]     While Plaintiff seeks relief from all defendants on his sole claim for wrongful termination of benefits, there is no evidence in the record to support such a claim against BorgWarner, Inc.; BorgWarner Morse TEC Inc.; or BorgWarner Flexible Benefits Plan.  Plaintiff specifically asserts, and Defendants agree, that LINA is responsible for both the payment of benefits due under the Policy and decisions regarding whether to grant or deny claims for benefits under the Policy.  Although neither party addresses the issue of the viability of Plaintiff's claim against the BorgWarner defendants, because it is clear on the record here that none of those defendants is an administrator of the Policy, the claim against those defendants is dismissed.

3

requiring lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; walking and/or standing frequently; and pushing and/or pulling arm and/or leg controls.

As part of Plaintiff's employment, he participated in the BorgWarner Flexible Benefits Plan ("the Plan"), which included, among other things, LTD coverage provided by the Policy issued by LINA.  Covered employees who become disabled while insured under the Policy, and remain disabled during a six month elimination period, receive benefits as long as the employee remains under the appropriate care of a physician and submits satisfactory records to LINA proving their continued disability as defined in the Policy.  The Policy includes the following definition of disability:

> The employee is considered disabled if, solely because of injury or sickness, he or she is either:
> 1.  unable to perform all the material duties of his or her regular occupation or a qualified alternative, or
> 2.  unable to earn 80 percent or more of his or her indexed covered earnings.
>
> After disability benefits have been payable for 30 months, the employee is considered disabled if, solely due to injury or sickness, he or she is either:
> 1.  unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
> 2.  unable to earn 80 percent or more of his or her indexed covered earnings.

See Administrative Record of Def. LINA at ex. C to Decl. of Emily A. Hayes, Dec. 1, 2010, Dkt. No. 36-1 ("Hayes Decl.").  LINA is responsible for both the payment of benefits due under the Policy and decisions regarding whether to grant

or deny claims for benefits under the Policy.

The Policy provides for a gross monthly payment of sixty percent of the employees's monthly covered earnings, minus other income benefits, including, among other things, Social Security Disability.  The Policy requires beneficiaries to apply for such benefits and to sign a reimbursement agreement.  If the beneficiary does not do so, LINA assumes the receipt of such benefits and will offset the assumed benefits from the beneficiary's LTD benefit.  The Policy further provides that benefits are paid through the earlier of the date the employee ceases to be disabled or the employee's sixty-fifth birthday, when disability begins prior to the employee's sixtieth birthday.

When Plaintiff was removed from work in June 2004, he was diagnosed as suffering from diabetes mellitus, lower back pain, neck pain, hypertension, sleep apnea, congestive heart failure and coronary artery disease.  There is clinical evidence supporting those and other maladies.  For example, an MRI taken in January 2007 showed degenerative disc disease at C4-5, 5-6 and 6-7, with likely compromise of the right C6 nerve root due to a right lateral recess disc herniation; and also moderately severe spinal canal stenosis at the C6-7 level, impinging on the spinal cord with likely compromise of the left and right C7 nerve roots.

Plaintiff made a claim to LINA for short term disability benefits, which was approved and paid by LINA from June 29, 2004 through December 2, 2004.  Plaintiff's claim then transitioned to a claim for LTD benefits, which was approved on January 5, 2005, effective December 23, 2004.  Plaintiff's award of LTD benefits was based upon a decision by LINA that he was unable to perform his regular occupation.  Plaintiff applied for Social Security Disability benefits in 2005 and received an award of Social Security Disability benefits in or about April

2006.

On or about December 5, 2006, LINA notified Plaintiff that it was beginning its investigation to determine if Plaintiff was disabled under the Policy's "any occupation" definition of disability, which would be effective June 23, 2007, after his receipt of thirty months of benefits. LINA requested that Plaintiff complete an updated disability questionnaire, and also requested updated medical information from his treating physicians. LINA received physical ability assessment ("PAA") forms completed by each of Plaintiff's treating physicians, Dr. Ortiz and Dr. Van Doren. The PAAs list a series of activities and prompt the physician to indicate the patient's level of functioning relative to those activities by checking a box corresponding to one of the following: not applicable to diagnosis(es); Continuously (67-100%, 5.5 + hrs); Frequently (34-66%, 2.5-5.5 hrs); or Occasionally (1-33%, < 2.5 hrs).

In a PAA dated April 3, 2007, Dr. Van Doren reported that Plaintiff was capable of continuously reaching (5.5 or more hours per day) and capable of occasionally sitting, standing, walking, fine manipulation, lifting or carrying ten pounds, pushing, pulling, balancing, stooping, kneeling, crouching and crawling (less than 2.5 hours per day). In a PAA dated April 4, 2007, Dr. Ortiz reported that Plaintiff could occasionally stand, push, pull, climb, balance, stoop, kneel, crouch and crawl (less than 2.5 hours per day) and that Plaintiff could frequently sit and lift more than ten pounds (between 2.5 and 5.5 hours per day). In a note that same day, Dr. Ortiz wrote that Plaintiff's "prognosis is poor" and he is "frequently unable to perform many daily living tasks, let alone be able to work in any capacity. I do not feel that [Plaintiff] will ever be able to return to work." Ex. C to Hayes Decl. at 431. Also, in notes attached to his PAA, Dr. Ortiz wrote,

"Patient's prognosis is extremely poor.  Will never be able to return to work."  Id., at 434.

Plaintiff's medical records were reviewed by LINA vocational rehabilitation counselor Cammie McAda.  Ms. McAda concluded that the PAAs demonstrated that plaintiff was capable of functioning in a full sedentary capacity and in some light capacity.

LINA requested a transferable skills analysis ("TSA") to identify occupations that Plaintiff would be capable of performing based on the capabilities indicated by the medical information.  A TSA was prepared by an independent vocational counselor, Cyndi A. Miller, MA, CRC,[2] of Concentra Integrated Services.  Ms. Miller opined, based on Plaintiff's work experience, his reported educational background, and restrictions and limitations as reported by the PAAs, that Plaintiff "would have transferability to government services, professional and kindred occupations on the basis that the physical demands are limited to sedentary work and can be performed within the noted limitations and restrictions."  Ex. C to Hayes Decl. at 387.  Ms. Miller specifically noted that Dr. Van Doren's PAA "reports that [Plaintiff] is released to full time sedentary work" and that "[s]imilarly, [Dr.] Ort[i]z outlines sedentary work capabilities as well." Id. Ms. Miller went on to identify six occupations, with their corresponding Dictionary of Occupational Titles ("DOT") number, that can be performed in the Moravia, New York area,[3] at or above wage requirements for Plaintiff as follows:

_____

[2]      Licensed Certified Rehabilitation Counselor.

[3]      No explanation is given in the TSA, nor by the parties in their papers, regarding this choice of geography, given the records reflect that Plaintiff lives in Dryden, New York, which is nineteen miles away from Moravia, but fourteen miles from Ithaca, New York.

7

Records-Management Analyst (161.267-022); Records Analyst (161.267-026); Budget Analyst (161.267-030); Broker and Market Operator (162.157-010); Manager, Procurement Services (162.167-022); and Manager, Benefits (166.167-018).

Based on the medical records and results of the TSA, LINA determined that Plaintiff was not totally disabled from any occupation, as required by the Policy, and terminated his benefits effective June 23, 2007. Plaintiff was notified of this decision by letter dated April 19, 2007. In this letter, LINA noted that it determined, based on the PAAs from Doctors Ortiz and Van Doren, that Plaintiff was capable of performing sedentary physical demand work.

Plaintiff timely appealed LINA's decision. In his appeal, Plaintiff noted that he had been approved for Social Security Disability benefits. Plaintiff further provided updated medical records from Dr. Van Doren and Dr. Ortiz. A letter from Dr. Van Doren dated August 7, 2007 indicates that as of that date Plaintiff suffers from poorly controlled diabetes; angina with and without exertion, for which another heart catheterization was scheduled; chronic upper and lower back pain and neck pain that cannot be treated with surgery and for which Plaintiff takes medications daily that make him tired; sleep apnea; bilateral hip pain with walking; and knee pain. Dr. Van Doren also noted that Plaintiff takes fourteen medications daily. Dr. Van Doren concluded that Plaintiff "is unable to be employed in any capacity . . . at this time and in the foreseeable future. He has a very poor prognosis." Ex. C to Hayes Decl. at 403. In a letter dated September 6, 2007, Dr. Ortiz indicated that as of that date Plaintiff was being treated for lower back pain, shoulder pain, knee pain, neck pain and nerve pain. Dr. Ortiz indicated his agreement that Plaintiff's "prognosis is poor" and reiterated that Plaintiff "is

frequently unable to perform many daily living tasks, let alone be able to work in any capacity.  I do not feel [he] will ever be able to return to work." Id. at 404.

Plaintiff's appeal was assigned to a claim manager who was not involved in the decision to terminate Plaintiff's original claim.  After all medical records were received by LINA, a medical file review was conducted by LINA associate medical director, John Mendez, M.D.  In her notes to Dr. Mendez summarizing the records, the claim manager noted that included were a "PAA from Dr. [Van] Doren, IM dated 4/3/07 and PAA from Dr. Ortiz, pain mgt, dated 4/4/07 indicating sedentary." Ex. C to Hayes Decl. at 344.

Dr. Mendez's report indicated examples of musculoskeletal limitations could include measured range of motion limitations by goniometry or inclinometry and/or significant muscle strength deficits by manual muscle testing, but that absent such documentation, restrictions to no work duties are not medically supported.  Based on his review of the medical records,  including the PAAs of Dr. Van Doren and Dr. Ortiz, the TSA, and the updated letters from Dr. Van Doren and Dr. Ortiz, Dr. Mendez concluded that "there are no physical limitations or significant functional deficits that would preclude [Plaintiff] from performing a sedentary occupation from [June 22, 2007] forward." Ex. C to Hayes Decl. at 29-30.  Based on Dr. Mendez's review of the medical records, LINA upheld its decision to terminate Plaintiff's LTD benefits.  Plaintiff was informed of LINA's decision by letter dated November 12, 2007.

On June 3, 2008, Plaintiff submitted a second appeal, along with medical records purporting to support his ongoing disability under the "any occupation" standard.  LINA assigned the appeal to an appeals team member different from the personnel who received Plaintiff's first appeal.  Plaintiff's appeal was referred for

an independent medical review.  The referral was made to MES Solutions, a
vendor, who then assigned the review to James W. Butler, M.D.  Dr. Butler is a
physician board certified in family practice and preventative/occupational
medicine.  Dr. Butler did a thorough review and analysis of the medical records
contained in Plaintiff's file.

At LINA's request, Dr. Butler commented on whether the restrictions and
limitations alleged by Plaintiff and his treating physicians were supported by the
documentation for the period beginning June 23, 2007.  Dr. Butler opined that the
restrictions provided of Plaintiff being totally unable to work were not supported
by the medical information.  Dr. Butler stated that Plaintiff has lumbar stenosis,
diabetes, hypertension, shoulder pain, knee pain, and back pain, none of which
preclude seated work or performance of his duties.  Plaintiff also has sleep apnea,
which his physician states is the cause of cognitive impairments.  Dr. Butler found
that there had been no cognitive impairments proven but only given as symptoms
by Plaintiff, and Dr. Van Doren admitted that he has never seen drowsiness in
Plaintiff and that Plaintiff drives himself twenty miles to the doctor's office.  Dr.
Butler concluded that there was no evidence in the file supporting Plaintiff's
impairment.  Dr. Butler noted that Dr. Ortiz and Dr. Van Doren both provided
PAAs that fit into a sedentary work requirement.  Accordingly, LINA upheld its
decision to deny Plaintiff's LTD benefits effective June 23, 2007, based on Dr.
Butler's report.  Plaintiff was informed of LINA's decision on August 7, 2008.

With the conclusion of Plaintiff's second appeal, he exhausted his
administrative remedies.  Plaintiff thereafter timely commenced this civil action
seeking judicial review of LINA's denial of his LTD benefits.

## *IV.  Discussion*

Initially, it is important to note that here, the parties agree that LINA has discretion to both decide whether to grant or deny claims for benefits under the Policy and to pay benefits due under the Policy.  LINA exercised that discretion to deny Plaintiff's claim for LTD benefits.  Plaintiff, both in support of his motion for summary judgment and in opposition to Defendants' motion for summary judgment, argues that LINA's decision is arbitrary and capricious.  Plaintiff argues that this court, in deciding whether LINA's denial of his LTD benefits was arbitrary and capricious, should weigh as a factor LINA's conflict of interest due to two procedural irregularities.  First, Plaintiff argues, LINA persisted in misconstruing the PAAs to support its conclusion that Plaintiff could perform sedentary work and LINA relied on a faulty TSA to conclude that Plaintiff is vocationally qualified for employment.  Second, Plaintiff argues that despite the Policy's requirement that Plaintiff apply for Social Security Disability benefits, which he successfully accomplished, LINA failed to consider same in its decision to deny Plaintiff's LTD benefits.  Regardless whether the court weighs LINA's conflict of interest, Plaintiff argues, LINA's denial of his LTD benefits was arbitrary and capricious because it relied on a flawed interpretation of the PAAs and it relied on a flawed TSA to reach its conclusion that Plaintiff was both physically and vocationally capable of working.

In support of their opposition to Plaintiff's motion for summary judgment and in support of their motion for summary judgment, Defendants argue that LINA's denial of Plaintiff's LTD benefit was reasonable and supported by substantial evidence.  In opposition to Plaintiff's motion for summary judgment, Defendants further argue that Plaintiff fails to establish that LINA's claims

11

determination was actually influenced by its conflict of interest, and therefore the conflict should be given no weight.

Defendants argue that, although LINA is not required to defer to the conclusions of Plaintiff's treating physicians, the PAAs completed by those physicians supported a conclusion that Plaintiff is capable of performing sedentary work.  Defendants further argue that the TSA, performed by an outside reviewer, revealed that Plaintiff could perform six occupations.  Defendants also argue that LINA appropriately relied on two independent physicians, both of whom reviewed the record and came to the conclusion that Plaintiff is physically and vocationally capable of employment.  Finally, specifically regarding their argument that LINA's conflict should be given no weight, Defendants argue that LINA's failure to mention Plaintiff's Social Security Disability award in its explanation of its denial of Plaintiff's LTD claim is not a procedural irregularity as LINA is not bound by that award, nor is it required to defer to the findings of the Social Security Administration.

### A.  Standard of Review in Wrongful Termination Claims Under ERISA

ERISA does not prescribe the appropriate standard of review for challenges to benefit eligibility determinations.  See Novella v. Westchester County, 661 F.3d 128, 140 (2d Cir. 2011).  However, the Supreme Court has instructed that where an employee benefit plan invests its administrator with broad discretionary authority to determine eligibility, challenges to benefit eligibility determinations are reviewed under an arbitrary and capricious standard.  See id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948 (1989)).  When applying an arbitrary and capricious standard, "[a] court may overturn a plan administrator's decision ... only if the decision was without reason, unsupported

by substantial evidence[,] or erroneous as a matter of law." Id. (quoting Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003) (internal quotation marks omitted).  "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 141 (2d Cir. 2010).

### B.  Some Weight Shall be Accorded LINA's Conflict of Interest

Upon judicial review of a discretionary benefits determination, where, as here, a plan administrator both evaluates claims for benefits and pays benefits claims, a conflict of interest is created, which should be weighed, as one factor among many, in determining whether there is an abuse of discretion.  See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111-116, 128 S. Ct. 2343, 2349-51 (2008). In Glenn, the Supreme Court observed that courts will make a determination "by taking account of several different, often case-specific, factors, reaching a result by weighing all together."  Id., at 117, 128 S. Ct. at 2351.  The Court went on to advise that

> any one factor will act as a tiebreaker when the other
> factors are closely balanced, the degree of closeness
> necessary depending upon the tiebreaking factor's
> inherent or case-specific importance.  The conflict of
> interest . . ., for example, should prove more important
> (perhaps of great importance) where circumstances
> suggest a higher likelihood that it affected the benefits
> decision, including, but not limited to, cases where an
> insurance company administrator has a history of biased
> claims administration. It should prove less important
> (perhaps to the vanishing point) where the administrator
> has taken active steps to reduce potential bias and to
> promote accuracy, for example, by walling off claims

13

> administrators from those interested in firm finances, or
> by imposing management checks that penalize inaccurate
> decisionmaking irrespective of whom the inaccuracy
> benefits.

Id. (citations omitted).  The Court of Appeals for the Second Circuit has since found that "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." Durakovic, 609 F.3d at 140 (citing Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 83 (2d Cir. 2009)).

Here, neither party addresses the issue of whether LINA has a "history of biased claims administration" or whether it "has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Glenn, at 117, 128 S. Ct. at 2351.  Instead, Plaintiff argues that LINA's inaccurate interpretation of the PAAs and its reliance on a faulty TSA are "procedural irregularities" that the court should take into consideration. Defendants correctly point out that those arguments are more properly addressed to the merits of Plaintiff's wrongful termination claim, and not the issue of whether the court should give any weight to LINA's conflict of interest when addressing the merits of Plaintiff's claim.  However, Plaintiff does make the relevant argument that LINA's failure to consider the Plaintiff's favorable Social Security Disability claim, despite the Policy's requirement that he apply for that benefit, tends to show that LINA's decision to terminate his LTD benefits was influenced by the conflict.  Defendants counter that LINA was not required to accord any special deference to the Social Security Administration's finding that Plaintiff is disabled when making its own disability determination.  See

14

Durakovic, 609 F.3d at 141 (citing Paese v. Hartford Life & Acc. Ins. Co., 449 F.3d 435, 442-43 (2d Cir.2006) (no special deference to the determination of the Social Security Administration is required)).  In Glenn, however, the Supreme Court noted that the lower court was justified in giving weight to a conflict of interest where, as here, the employee benefit plan required the plaintiff to apply for Social Security Disability benefits, thereby encouraging her to argue that she could do no work, but then the plan administrator ignored the Social Security Administration's conclusion that she was disabled in its finding that the plaintiff could do sedentary work.  See Glenn, 554 U.S. at 118, 128 S. Ct. at 2352.  Here, LINA failed to provide any explanation for its departure from the Social Security Administration's finding that Plaintiff could do no work.  Accordingly, some weight shall be given to LINA's conflict of interest in deciding whether its denial of Plaintiff's LTD benefits claim was arbitrary and capricious.

### C.  LINA's Termination of Plaintiff's LTD Benefits was Arbitrary and Capricious

Where, as here, an employee benefit plan defines disability as being unable to engage in any employment, the plan administrator is required to "undertake two analyses when determining disability-benefits eligibility: (1) a physical capacity analysis-whether the applicant is physically capable of further employment-and (2) a vocational capacity analysis-whether the applicant is vocationally qualified for any further employment of which she is physically capable."  Durakovic, 609 F.3d at 141 (citing Demirovic v. Building Service 32 B-J Pension Fund, 467 F.3d 208, 215 (2d Cir.2006)).

#### 1.  Plaintiff's Physical Ability

Plaintiff argues that there is considerable evidence in the record to support a

15

conclusion that he is disabled according to the Policy.  Plaintiff cites the PAAs provided by his treating physicians, Dr. Van Doren and Dr. Ortiz, as well as an MRI of his spine, which confirms degenerative disc disease.  Defendants argue that LINA's decision to deny Plaintiff's LTD benefits claim was reasonable and based on substantial evidence, including the PAAs from Plaintiff's treating physicians as well as conclusions of two independent reviewing physicians.

To be sure, plan administrators are not required to give special deference to the opinions of a claimant's treating physicians, nor are they required to provide explanation "when they credit reliable evidence that conflicts with a treating physician's evaluation." Durakovic, 609 F.3d at 141 (citing Black & Decker Disability Plan v. Noord, 538 U.S. 822, 834, 123 S. Ct. 1965 (2003)).  Thus, the Court of Appeals for the Second Circuit has held that a plan administrator's denial of benefits is not arbitrary and capricious where it is based on the opinions of independent physicians, despite contrary evidence from a claimant's treating physician.  See Durakovic, 609 F.3d at 141 (administrator's finding not arbitrary and capricious where it is supported by the reports of two independent doctors despite claimant's submission of multiple medical reports supporting her disability) (citing Demirovic, 467 at 212 (holding that a denial was not arbitrary and capricious where supported by the reports of two independent physicians, even in light of contrary findings by five treating physicians and the Social Security Administration)).

Here, however, LINA did rely, in part, on the reports of Plaintiff's treating physicians, in addition to the opinions of two independent physicians who reviewed the record evidence (which necessarily includes the reports of Plaintiff's treating physicians).  LINA concluded that Plaintiff was capable of sedentary

16

work, relying on the PAAs supplied by Dr. Van Doren and Dr. Ortiz, and relying upon the interpretation of those PAAs by its vocational rehabilitation counselor, Cammie McAda, and two independent physicians, Dr. Mendez and Dr. Butler. The dispute here is whether the reports of Dr. Van Doren and Dr. Ortiz, neither of which conclude that Plaintiff was capable of sitting longer than 5.5 hours in an 8 hour workday, can support a conclusion that Plaintiff can perform a sedentary occupation.

In support of their argument that LINA accurately concluded that Plaintiff can perform sedentary employment, Defendants cite Simone v. Prudential Insurance Company of America, which, Defendants purport, contradicts Plaintiff's premise that the ability to do a sedentary occupation requires that an employee be able to sit for six hours within a work day.  The plaintiff in Simone had back problems and could only sit or stand for half hour increments, but was nonetheless found capable of sedentary work.  See Simone v. Prudential Ins. Co. of America, No. 04-cv-2076, 2005 WL 475406, *8 (S.D.N.Y. Feb. 28, 2005) (aff'd, 164 F. App'x 39 (2006).  There the court held that it was not unreasonable for defendant Prudential to rely on the determination of a physician who considered all of the medical records and concluded that the plaintiff "could perform a sedentary job as long as he could get up intermittently and move about as necessary."  Id.  Plaintiff correctly points out that Simone fails to support Defendants' position.  Here, the PAAs completed by Plaintiff's treating physicians account for such intermittent changes in position.  The PAA form used here prompts a physician to report what a patient can tolerate throughout an eight-hour workday, "*with positional changes and meal breaks*."  Ex. C to Hayes Decl. at 416, 432 (emphasis in original). Accordingly, the reports relied on by LINA here represent that Plaintiff could not

sit more than 2.4 hours at the least (Dr. Van Doren) or 5.5 hours at the most (Dr. Ortiz) in an eight-hour work day, accounting for the very changes in position that the court in <u>Simone</u> determined allowed for the plaintiff to perform sedentary work.

To be sure, the generally recognized definition of sedentary work is work that "involves up to *two hours of standing or walking* and *six hours of sitting* in an eight-hour work day." <u>Connors v. Conn. Gen. Life Ins. Co.</u>, 272 F.3d 127, 136 n.5 (2d Cir. 2001) (citing <u>Curry v. Apfel</u>, 209 F.3d 117, 123 (2d Cir. 2000) (emphasis in original)) (applying the Social Security Administration's definition of sedentary work in an ERISA case involving wrongful termination of long term disability benefits). <u>See also</u> <u>Alfano v. Cigna Life Ins. Co.</u>, No. 07-cv-9661, 2009 WL 222351, at *14 (S.D.N.Y. Jan. 30, 2009); <u>Mead v. ReliaStar Life Ins. Co.</u>, No. 2:05-cv-332, 2008 WL 850675, at *2 n.4 (D. Vt. Mar. 27, 2008); <u>Solnin v. GE Group Life Ins. Co.</u>, No. 03-cv-4857, 2007 WL 923083, at *10 (E.D.N.Y. Mar. 23, 2007); <u>Krizek v. Cigna Group Ins.</u>, No. 5:99-cv-1943, 2005 WL 928637, at *5 n.5 (N.D.N.Y. Mar. 22, 2005). Defendants fail to address this case law, but repeat their mantra that LINA properly concluded Plaintiff had the ability to perform sedentary work. Defendants contend there is substantial evidence to support LINA's conclusion, but fail to identify what that evidence is, other than the reports of two vocational rehabilitation counselors and two reviewing physicians who relied on the PAAs to conclude that Plaintiff could perform sedentary work.

It is true that LINA is not required to explain its crediting of reliable evidence that conflicts with the opinions of Dr. Van Doren or Dr. Ortiz. <u>See</u> <u>Durakovic</u>, <u>supra</u> at 16. Here, however, in concluding that Plaintiff is capable of sedentary work, LINA credits the PAAs submitted by Plaintiff's treating

physicians, but misapplies the information provided therein.  The PAAs clearly evidence Plaintiff's inability to sit long enough to do sedentary work in accordance with the definition of sedentary work relied on by courts in this circuit. Therefore, LINA's unexplained conclusion that Plaintiff could perform sedentary work is not supported by substantial evidence and accordingly is arbitrary and capricious.  The conclusion that LINA's physical capacity analysis is arbitrary and capricious is independent of, and is therefore only bolstered by, any weight given to LINA's conflict of interest.

### *2.  Plaintiff's Vocational Qualification*

LINA relied on the TSA completed by Cyndi Miller to support its conclusion that Plaintiff no longer met the Policy's definition of disabled and its consequent decision to terminate Plaintiff's LTD benefits.  According to Ms. Miller, Dr. Van Doren "reports that [Plaintiff] is released to full time sedentary work" and Dr. Ortiz "outlines sedentary work capabilities as well."  Ex. C to Hayes Decl. at 387.  As Plaintiff correctly points out, it was arbitrary and capricious for LINA to rely on the TSA, because it relied upon an erroneous assessment of Plaintiff's physical capabilities.  See Alfano, 2009 WL 222351, at *19.

In addition, Plaintiff argues that LINA should not have relied on the TSA to conclude that Plaintiff could perform the material duties of the six listed occupations because Plaintiff is not, nor may he reasonably become, qualified for those positions.  Because there is an independent ground to conclude that LINA's reliance on the TSA was arbitrary and capricious, there is no need to address Plaintiff's alternative argument.  Accordingly, because LINA's decision to terminate Plaintiff's LTD benefits is arbitrary and capricious, Plaintiff is entitled

19

to reinstatement of his LTD benefit going forward as well as retroactive to June 23, 2007.

### *V.  Conclusion*

In accordance with the foregoing discussion, it is ORDERED that the motion for summary judgment by defendants, Life Insurance Company of North America ("LINA"); BorgWarner, Inc.; BorgWarner Morse TEC Inc.; and BorgWarner Flexible Benefits Plan, see Dkt. No. 36, is GRANTED in part, and DENIED in part; and it is further

ORDERED that the motion for summary judgment by plaintiff, Curt A. Wykstra, see Dkt. No. 34, is GRANTED in part, and DENIED in part; and it is further

ORDERED that this action is DISMISSED as against defendants BorgWarner, Inc.; BorgWarner Morse TEC Inc.; and BorgWarner Flexible Benefits Plan; and it is further

ORDERED that LINA shall pay long-term disability benefits to Plaintiff for the period June 23, 2007 to the date of judgment, in accordance with the terms of the Policy; and it is further

ORDERED that LINA shall pay long-term disability benefits to Plaintiff going forward, unless a termination of benefits is consistent with the Policy and justified by a change in Plaintiff's condition; and it is further

ORDERED that LINA shall pay Plaintiff's attorney's fees and costs in an amount to be determined; and it is further

ORDERED that Plaintiff shall petition the court for attorney's fees no later than thirty days from the date of this order; and it is further

ORDERED that LINA shall respond to said petition no later than fifteen

days from the date of its filing; and it is further

ORDERED that LINA shall pay Plaintiff prejudgment interest; and it is further

ORDERED that if the parties agree on the amount of benefits owed and the interest calculations, the parties must submit a proposed form of judgment no later than thirty days from the date of this order.  If the parties disagree on the amount of benefits owed and the interest calculations, then LINA shall, no later than thirty days from the date of this order, serve and file an affidavit documenting its calculation of the benefits and interest owed to Plaintiff under this order; and Plaintiff shall serve and file a response no later than fifteen days after LINA serves and files its affidavit.

IT IS SO ORDERED.

DATED:       February 2, 2012
            Syracuse, New York

Neal P. McCurn
Senior  U.S. District Judge

21